UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------
GLORIA QUINTEROS on behalf of herself
and all others similarly situated

                                               12 CV 2517 (WFK)

                    Plaintiff,

          -against-

MBI ASSOCIATES, INC.

                    Defendant.
-----------------------------------------------------------

## MEMORANDUM OF LAW IN RESPONSE
## <u>TO DEFENDANT'S MOTION TO DISMISS</u>

Dated: Cedarhurst, New York
August 31, 2012

Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411

1

## INITIAL STATEMENT

This matter against this particular collection agency was brought pursuant to the Fair Debt Collection Practices Act.  Over the years, I have brought various actions against the defendant.  We have resolved them and there have been no decisions but unlike this matter, I have usually had to file an application for default. Perhaps, Mr. Alpren has decided to take a different approach to this matter.  We believe that it is clear from the established caselaw that the defendant is in violation.

## STATEMENT OF FACTS

The defendant sent the plaintiff a collection letter dated February 22, 201. (Complaint par. 11.)   Said letter states: "Should you require more time to make payment or wish to make payment arrangements, please call this office upon receipt of this letter. Our office accepts Visa, Mastercard and American Express which you may pay over the phone or online at www.paymbi.com.  There will be a $5.00 processing fee for all credit cards or checks over the phone."  (See collection letter attached to complaint.)  It is clear from the language all consumer are encouraged to pay by telephone.  However, especially interpreted by the least sophisticate consumer standard, the language directs consumers who (a) need more time or (b) wish to make payment arrangements to specifically call and pay by credit card or check over the phone.  For these consumers, the defendant has highly encouraged if not made stronger implications as in requiring these types of consumers to pay over the phone and incur the $5.00 fee.  The complaint further alleges that the defendant has engaged in deceptive practices by making a false representation that it was entitled to receive compensation for payment by credit card, or by collecting an amount that was not authorized by contract or permitted by law.

2

(Complaint par. 14.)  Plaintiff submits that the factual recitation is sufficient to withstand a motion to dismiss.

### STANDARD FOR MOTION TO DISMISS

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 555, 127 S.Ct. 1955, 1964 (2007); accord Ashcroft v. Iqbal, ---U.S. ---, 129 S.Ct. 1937, 1949-50 (2009)).  In other words, a complaint must contain factual allegations to support the legal conclusions and the factual allegations must "plausibly give rise to an entitlement for relief." Iqbal, 129 S.Ct. at 1950.

The Second Circuit has explained that under the Twombly standard, a Court's inquiry under Rule 12(b)(6) should be "guided by two working principles." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949) (internal quotation marks omitted.).  "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Iqbal, 129 S.Ct. at 1949) (internal quotations marks omitted, alteration in original.)  Second, only a complaint that states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its own judicial experience and common sense." Id. (quoting Iqbal, 129 S.Ct. at 1950) (internal quotations marks omitted, alteration in original.)  Thus, "[w]hen there are

well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Iqbal, 129 S.Ct. at 1950.

Upon examination of the complaint, it is clear that the plaintiff has included sufficient allegations to support violations of the Act.

## STANDARDS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

It has been well established that the use of any false, deceptive or misleading representation in a collection letter violates the Fair Debt Collection Practices Act (FDCPA), regardless of whether the representation in question violates particular subsection of FDCPA prohibiting false or misleading representations. See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.1993). Debt collection practice can be false, deceptive, or misleading in violation of Fair Debt Collection Practices Act (FDCPA) even if practice does not fall within any of the statutory categories listed as being false or misleading representations. See id.

The Court in Clomon further establishes that the most widely accepted test for determining whether collection letter is false or misleading representation, thereby violating Fair Debt Collection Practices Act (FDCPA), is objective standard based on "least sophisticated consumer" standard. See id.  This standard serves a dual purpose in that it endures protection of all consumers, even naive and trusting, against deceptive debt collection practices and protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices. See id. Fundamentally, it is well settled that the basic purpose of [this standard] is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. See id. See also Teng v. Metropolitan Retail Rcovery Inc., 851 F. Supp. 61 (E.D.N.Y. 1994).

4

Furthermore, it is well settled that the "deceptiveness" as defined by the FDCPA is broadly interpreted to include a variety of ambiguities as well as notices that can be reasonably read to have two or more different meanings, one of which is inaccurate. See Barrientos v. Law Offices of Mark L. Nichter, 76 F. Supp.2d 510 (S.D.N.Y 1999).

Section 1692e(10) of the Act prohibits "the use of any false representation or deceptive means to collect any debt or obtain any information concerning a consumer." See 15 U.S.C. § 1692e(10); See also Ungar v. National Revenue Group Ltd., 2000 U.S. Dist. Lexis 18708 (E.D.N.Y. 2000).

In order to put oneself in the mindset of the least sophisticated consumer, it is helpful to keep in mind the following. McMillan v. Collection Professionals Incorporated, 455 F.3d 754 (7th Cir. 2006) quotes the following: "One of the most frequent fallacies concerning debt collection legislation is that contention that the primary beneficiaries are 'deadbeats.' In fact, however, there is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debt is miniscule. . . [T]he vast majority of consumer who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." See S.Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

The defendant has set forth standards under the FDCPA, but it seems to be defendant's interpretation. Defendant boldly concludes that the standard for an FDCPA violation is abuse. This standard is clearly not that of abuse. There are a plethora of cases which concern detailed analysis of contradiction of rights and failure to disclose

necessary information.  Here, the defendant has disclosed false information.  Here, the

defendant has disclosed information that it may impose a certain charge which it cannot.

That is deception, fraud and abuse all in one.

### THE LANGUAGE AT ISSUE IS DECEPTIVE AND ILLEGAL

At the pre-motion conference (transcript attached hereto), the Court spent some

time addressing the issue of adding a $0.50 charge to credit card balances under certain

circumstances.  The Court directed us to research those matters stated: "But I would urge

both counsel to take look at the R.H. Macy's case and the so-called fifty-cent fee ase

which was decided in the Court of Appeals in the seventies to tee up the issues of the

appropriateness of fees and charges once you start to run into these protected areas."  The

undersigned took this directive seriously and wrote to the Court for case citations.  In the

defendant's Affirmation in Support of Its Motion to Dismiss, the defendant has

characterizes the travel of the $0.50 fee issue as coming from plaintiff.  But, of course, it

was the Court which addressed the issue at the pre-motion conference.

Plaintiff submits that defendant has dismissed the Court's directive with a few

lines.  However, the Court was clear that the issue needs to be addressed.

It all of my years of litigating pursuant to the FDCPA, I do not ever recall a

directive from Federal Judge to analyze a certain state law claim and see how it applies to

the FDCPA or how it impacts upon the FDCPA.

The Court has asked the parties to analyze a $0.50 charge to credit card balances

in certain circumstances which was deemed to be illegal by the New York Court of

Appeals.  The question is to what extent is the determination of that fee likened to the

imposition of a $5.00 fee for using a credit card to pay a portion of the outstanding debt

or payment by check over the phone.  What is similar is that the imposition of the fee would be when there is a balance that carries past 25 days.  In the within facts, the imposition of the $5.00 is in a similar context when the debt is in default.  There is a similarity.  However, what struck the undersigned when analyzing the *Sternberg* decision is the language used by the Court:  "Our holding that the CCSI service charge is illegal accords the intention of the Legislature to provide protection for consumers in retail installment credit transactions."  At 360.  "These six bills relating to the regulation and supervision of installment sales mark of the greatest advances in the history of the State in the field of consumer protection . . ."  The remedial nature of the statute requires that it be liberally construed in order to carry out its intended purposes and reforms (citations omitted).  Id.  See opinion for the conclusion of the paragraph.

Perhaps it is with the factual similarly of the question of an imposition of a fee upon payment of an obligation and the remedial nature of the both the Retain Installment Sales Act and the Fair Debt Collections Practices Act.  It is clear that Congress passed the FDCPA in order to protect the rights of consumers when dealing with debt collectors.  When contemplating the facts and the language cited above of the Sternberg decision and considering the within facts, I believe that one is forced to conclude that unilaterally imposing a $5.00 charge for certain payments is something that the collection industry is not supposed to do.

However, defendant has gone beyond the understanding reached at the pre-motion conference.  The parties agreed that the defendant would make a motion to dismiss.  That means that the defendant limits the motion to the four corners of the complaint.  The defendant has not done this.

Defendant has included an affidavit from the principal of the corporation setting forth certain amounts which the defendant has been charged by the credit card companies. It is axiomatic that credit card companies charge their users for accepting payments via credit card. However, it is not commonplace that one goes to a store and pays more for using a credit card. One is charged the same amount. The defendant has tried to substantiate its charging the $5.00 fee where it shows that on average, it is charge approximately that amount. However, the law is clear that regardless as to whether it is roughly the charge, the consideration is was it allowed by law or by contract between the underlying creditor and the plaintiff.

What defendant has failed to address and which is glaringly absent from the defendant's affirmations, is the issue of accepting checks via telephone. The undersigned pointed out at the pre-motion conference that in addition to the problem of the fee for accepting credit card payments, the defendant has encouraged the consumers to pay via check via telephone and incur a fee for that as well. Perhaps that is why the State of Colorado Attorney General's Office issued an advisory opinion that it is only permitted under certain circumstances. (See opinion attached hereto.) We submit that there is no agreement between the plaintiff and the underlying creditor Lutheran Medical Center to charge a fee for payment via credit card or check over the telephone nor do we believe that such a practice is permitted by law.

The defendant has concentrated its argument on the issue of the imposition of a $5.00 for credit card transactions which was addressed in other decisions cited by the plaintiff in the complaint and by the defendant in its initial memorandum. As stated above, defendant characterizes the FDCPA as an analysis as to whether there is abuse.

8

(See paragraph 9 of defendant's affirmation.)  The defendant analyzes 1692e(2) and cites to the statute where the one cannot make a representation that compensation may be lawfully received.  The defendant argues that the $5.00 charge is not misleading and cites to *Clomon v. Jackson* concerning the least sophisticated consumer standard.  However, we contend that any virtually any consumer would be mislead by the imposition of the $5.00 charge.  Defendant argues that the setting forth of the charge is deceptive because it is set forth as a disclosure; however, defendant misses the point.  The setting forth of a disclosure even in a clear fashion, but where the disclosure is illegal, it is then rendered a misleading representation concerning compensation as per 1692e(2).  This is clear from the statutory section.  As per Clomon v. Jackson, a consumer could be gullible or shrewd and believe that the imposition of a $5.00 is legal.  Perhaps the more shrewd and the most critical of consumers will question whether the $5.00 is charge but clearly most consumers would just agree to pay the $5.00 fee.  Similarly, the imposition of the charge is a violation of 1692f(1).  The $5.00 fee as discussed above we allege is not permitted by nor in the underlying agreement.

The collection letter at issue encourages consumers to pay via credit card especially those in certain circumstances and almost requires them to do so.  In addition, it provides for payment via check on the phone.  This unconscionable act by the defendant should not be condoned.  It is shocking that the collection industry acts in such a fashion where common businesses do not impose such a charge.  The Court has recognized the unsavory history of the imposition of charges to consumers and how in the State of New York the Court of Appeals found such charges illegal.

Lastly, the recitation of facts above make it clear that the facts in this matter are as egregious if not more egregious than the facts in Judge Mauskopf's decision in the *Shami* decision.

WHEREFORE, plaintiff respectfully requests that the Court deny defendant's motion to dismiss.

Dated: Cedarhurst, New York
August 31, 2012

Respectfully submitted,

/s/

_____
Adam J. Fishbein, P.C. (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411

10

1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3      - - - - - - - - - - - -   X

 4     QUINTEROS,                  :
                                              12 CV 2517
 5              Plaintiff          :

 6

 7              -against-          :
                                          United States Courthouse
                                          Brooklyn, New York
 8     MBI ASSOCIATES, INC.        :
                                          July 2, 2012
 9              Defendant.         :       2:30 o'clock p.m.

10      - - - - - - - - - - - -   X

11
                        TRANSCRIPT OF CONFERENCE
12              BEFORE THE HONORABLE WILLIAM F. KUNTZ II
                    UNITED STATES DISTRICT JUDGE
13

14
       APPEARANCES:
15

16
       For the Plaintiff:             ADAM J. FISHBEIN, ESQ.
17                                    735 Central Avenue
                                      Woodmere, NY 11598
18

19
       For the Defendant:             CHRISTIAN BROWNE, ESQ.
20

21
       Court Reporter:                Gene Rudolph
22                                    225 Cadman Plaza East
                                      Brooklyn, New York
23                                    (718) 613-2538

24
       Proceedings recorded by mechanical stenography, transcript
25     produced by computer-aided transcription.
```

GR      OCR      CM      CRR      CSR

2

```
 1            THE CLERK:  We are here for a civil premotion
 2   conference, docket number 12 CR 2517, Quinteros versus MBI
 3   Associates.
 4            Counsel, please state your appearances for the
 5   record.  Spell your names for the reporter.
 6            MR. FISHBEIN:  Adam J. Fishbein for the plaintiff.
 7   Good afternoon. Your Honor.
 8            A D A M, J period, F I S H B E I N.
 9            THE COURT:  Good afternoon, Mr. Fishbein.
10            Please be seated and remain seated.
11            Thank you.
12            MR. FISHBEIN:  Thank you.
13            MR. BROWNE:  Good afternoon, Your Honor.
14            Christian Browne, B R O W N E, and
15   C H R I S T I A N, for the defendant MBI Associates.
16            THE COURT:  Good afternoon, sir.
17            You may be seated as well.  Please remain seated for
18   the balance of the conference and relax.
19            We are here to discuss the legal issues.
20            Let me hear from the plaintiff first, if I might, as
21   to what this case is about and then we will hear with respect
22   to the potential moving party as to the basis for the motion
23   and then we will talk about possible schedule.
24            MR. FISHBEIN:  Your Honor, this case was brought
25   pursuant to the Fair Debt Collection Practices Act on a very
```

GR      OCR      CM      CRR      CSR

3

1   narrow issue concerning the propriety of adding in a

2   five-dollar transaction fee if the consumer decides to pay the

3   debt or, I presume, a portion thereof by using a credit card.

4           I have relied upon Judge Mauskopf's decision.  I do

5   bring a lot of cases in this courthouse.  This decision was

6   not mine but I did study it and do believe that it applies in

7   this case.

8           This case was also brought as a putative class

9   action suit.  And while reading defendant's letter, I don't

10  agree that I did not set forth any statutory section to form

11  the basis of liability, I do concede that 1692(e)(2) should

12  have been set forth in paragraph 14 as well.  It is set forth

13  in paragraph 17 concerning the definition of the class

14  alleging that the class members have a common violation of the

15  FDCPA, which implicates (e)(2) and (f)(1) and I -- just one

16  other issue, that in reviewing defendant's letter again, that

17  he makes reference to a stub which -- where it sets forth the

18  five-dollar fee.

19          I am not really sure if it -- I am not really sure

20  if it makes a difference, but we are relying upon where it

21  sets forth there will be a five-dollar processing fee for all

22  credit cards or checks over the phone.  This is actually in

23  the body of the letter.

24          THE COURT:  Right.

25          MR. FISHBEIN:  So that actually in terms of where

GR     OCR     CM     CRR     CSR

4

```
1    perhaps Judge Mauskopf may have -- there may be an issue where
2    if the collection agency doesn't actually keep any of the
3    five-dollar fee and it goes -- it is a charge by the credit
4    card company, here actually this case goes beyond the Shammy
5    decision because it says there is a five-dollar5 processing
6    fee for -- even for checks over the phone, where I presume
7    that there is no real fee incurred by the collection agency by
8    accepting a check over the phone.  It is just perhaps
9    the -- there is a little more time that their people would
10   have to devote to the matter as opposed to if a check were
11   received via mail.
12           I don't know if Your Honor really wanted me to get
13   into addressing the defendant's letter, but I guess in terms
14   of presenting a total package I think that's the best I can
15   do.
16           THE COURT:  That's very helpful and very well done.
17   I thank you for that.
18           MR. FISHBEIN:  Thank you.
19           THE COURT:  Sir?
20           MR. BROWNE:  Judge, as I outlined in my letter, I
21   see this as basically an issue of law case.  I am not exactly
22   sure what counsel is talking about with regards to what might
23   be said over the phone.  But with respect to what I understand
24   to be the crux of their claim, which is that -- the issue of
25   the propriety of the five-dollar credit card processing fee,
```

GR    OCR    CM    CRR    CSR

5

1   it is my contention that obviously that -- my client is

2   issuing and has been issuing letters that contain that

3   language.  That is not in dispute.

4          As I note in my letter, my client's collection

5   notice is prepared in conjunction with the trade association

6   for this -- for the debt collectors, the national trade

7   association for debt collectors.  That may be relevant down

8   the line depending on how the case proceeds in terms of

9   whether this, to the extent it is a violation, would be deemed

10  a willful violation, in any event.

11         But our position, as you know, judge, is that the

12  mere disclosure of charging a five-dollar processing fee, an

13  optional processing fee, and then the charge -- the actual

14  charging of that fee if the debtor so chooses to pay his debt

15  or a portion of his debt by credit card is not violative of

16  the act.

17         This basically rests on the case law as it is

18  developed, as well as a reasonable interpretation, we would

19  submit, of the statute.  The statute -- the Section 1692(e) is

20  titled false or misleading representations.  I don't think you

21  can say as a matter of law that there is anything false or

22  misleading about this.  It is a disclosure.  In fact, if

23  anything, it is informing a debtor about what will happen to

24  him should he elect to pay by credit card.  It is a one

25  sentence, plain language type of disclosure.  So I don't think

GR        OCR        CM        CRR        CSR

6

1   you can say as a matter of law there is anything false or

2   misleading about it.

3           I think the more complex question, shall we say,

4   would come under Section 1692(f)(1), which prohibits the

5   collection of interest. fees. charges or incidental expenses.

6   It is our position that this service charge is not the kind of

7   charge that Section 16 -- 1692(f)(1) seeks to prohibit, again,

8   in that it is one. optional, and two, it is really covering

9   the cost of the transaction for the debtor's convenience at

10  the debtor's option.  It is not resulting in a windfall.

11          THE COURT:  I would just observe that many years

12  ago, say about 35 or so years ago, when I was first starting

13  to practice, there was a case which you gentlemen may have

14  come across in your research efforts involving Citibank and

15  what was then called the fifty-cent fee case.  Citibank

16  elected to add a fifty-cent fee on a monthly basis to cover

17  the cost and expense of processing MasterCard and Visa

18  accounts when they first came into vogue.  They took the

19  position that it was not violative of the New York usury

20  statutes, usury ceiling.

21          There was one lawyer who was floating around, long

22  since passed on, I am afraid, who had been around and who

23  started practicing law the week of the stock market crash.  I

24  don't mean the 2008 stock market crash. I mean the 1929 stock

25  market crash.  He said you know, there is a case called

GR      OCR      CM      CRR      CSR

7

1   R.H. Macy's and Macy's did something like this in the

2   depression and the Court of Appeals found that you could call

3   it a fee, you could call it whatever you wanted to call it,

4   but if it took one penny more than the usury ceiling, it

5   violated the usury statute.

6           A lot of very high powered, fancy bank finance, bank

7   corporate lawyers said, that's just old so and so. He is an

8   old depression era guy. They went ahead and put the

9   fifty-cent fee in.

10          I commend to you what the Court of Appeals did to

11  vindicate the old guy from the stock market crash in finding

12  that in fact it did violate the usury ceiling and the bank was

13  forced to repeal the fifty-cent fee.

14          Indeed, for many years it was seen as the driving

15  force that led to the creation of bank holding company in

16  jurisdictions where there with were no usury ceilings and a

17  lot of monies in their operation in South Dakota in response

18  to that.

19          I give you this boring tangential legal history to

20  say, one, this is a very important area when you start talking

21  about fees and costs and ceilings.

22          So I will let you make the motion. We will talk

23  about timetables. But I would urge both counsel to take a

24  look at the R.H. Macy's case and the so-called fifty-cent fee

25  case which was decided in the Court of Appeals in the

GR        OCR        CM        CRR        CSR

8

1  seventies to tee up the issues of the appropriateness of fees

2  and charges once you start to run into these protected areas.

3  *There is lots more law and I am not suggesting for a minute*

4  that those cases are dispositive but I think that you will

5  need to address those issues because they are kind of lurking

6  just over the horizon in this case.

7         So I will turn to the moving party first.  I will

8  preface *by remarks by saying when I was in practice I always*

9  hoped when judges said. how long would you like to make your

10  motion, counsel, I wouldn't have to explain to them well, it

11  is July 2nd and we have something called the Fourth of July.

12  And then I would also like to have judges who wouldn't say

13  well, how long do you need to respond.  And then people *would*

14  say. we have the Jewish holidays coming in, we have

15  Thanksgiving, we have Christmas.

16         I know all that.  My view is, how long would you

17  like.  You will have that time.  How long you would like to

18  respond.  You will have that time.  And then you will have

19  that time to put in a reply.

20         We will start with you.  From today, how much time

21  would you like to have to put in your motion?

22         MR. BROWNE:  Thirty days would be sufficient.

23         THE COURT:  Thirty days.  Where does that take us

24  to, Mr. Jackson, looking at Fridays?

25         THE CLERK:  That will bring us to August 3rd, Your

GR      OCR      CM      CRR      CSR

9

1    Honor.

2              THE COURT:  Is that a holiday of any sort?

3              THE CLERK:  No, sir.

4              THE COURT:  All right.  Sir, how long would you like

5    to respond?  You can have as much time as you like.

6              MR. FISHBEIN:  I would then just ask also for

7    30 days.

8              THE COURT:  Okay.  Where does that take us to,

9    mindful that sort of impinges on Labor Day?

10             THE CLERK:  It does.  It brings us to Labor Day

11   week, Your Honor.  It brings us to September 7th, which is a

12   Friday.

13             THE COURT:  That's the Friday of Labor Day.

14             MR. FISHBEIN:  Maybe I will try to get it in before

15   then.

16             THE COURT:  You want to get it in before or after?

17   It up to you.

18             MR. FISHBEIN:  Before.

19             THE COURT:  You want to get in the Friday before.

20   That takes to us what?

21             THE CLERK:  That brings us to August 31st, Your

22   Honor.

23             THE COURT:  August 31st.

24             MR. FISHBEIN:  Okay.

25             THE COURT:  How long would you like to respond to

GR        OCR        CM        CRR        CSR

10

1    that, sir?

2              MR. BROWNE:  Two more weeks.

3              THE COURT:  Two weeks.  What does that take us to?

4              *THE CLERK:  That brings us to September 14th.*

5              THE COURT:  That gets us into the holidays.  We are

6    not going to have oral argument.  It should be okay.

7              MR. BROWNE:  That's okay for me.

8              MR. FISHBEIN:  Yes.  Unless Your Honor has a

9    bundling rule.  I forgot to check.

10             THE COURT:  We do.  We have the bundling rule.

11   Mr. Jackson will lay that out.

12             The bottom line, I won't get papers on ECF until the

13   *14th.*

14             MR. FISHBEIN:  You are saying, if that's a holiday

15   then I -- if I am responsible to put --

16             THE COURT:  No.  He is going to be responsible.

17             MR. FISHBEIN:  For all the filings?

18             THE COURT:  Yes, for all the filings.  That way you

19   don't get burdened.  I am not going to jam you up for the

20   holiday.

21             MR. FISHBEIN:  Okay.

22             THE COURT.  I am a Brooklyn boy.  It is not going to

23   happen in my court.  Don't worry about it.

24             Go ahead, Mr. Jackson.

25             THE CLERK:  Okay.  Counsel for the defendant shall

                GR     OCR     CM     CRR     CSR

11

1   serve the motion to dismiss on August 3rd.

2           Plaintiff shall respond to that motion on or before

3   August 31st.

4           Defense counsel shall reply to that response on or

5   before September 14th.

6           Once the motion is fully briefed, the moving party

7   shall serve and file all papers on ECF by 5:00 o'clock pm on

8   September 14th.

9           THE COURT:  Typically I do not require oral

10  argument.  So you should anticipate that I will decide the

11  motion on the papers.  If I require oral argument, I will wait

12  until we are past the holidays.  You don't have to worry about

13  that.

14          MR. FISHBEIN:  Courtesy copies?

15          THE COURT:  Yes, please.

16          MR. BROWNE:  Sure.

17          MR. FISHBEIN:  That the defendant would be

18  responsible for all -- submitting all motion papers or would I

19  be required to submit a courtesy copy of my response to the

20  motion?

21          THE COURT:  How do we usually handle that?

22          THE CLERK:  The moving party serves a courtesy copy

23  on the Court.

24          THE COURT:  A courtesy copy, including the

25  adversary?

GR       OCR       CM       CRR       CSR

12

1        THE CLERK:  Yes.

2        THE COURT:  You don't have to worry about serving

3  anything on the Court.

4        Is that okay?

5        MR. BROWNE:  Perfectly fine.

6        THE COURT:  Again, review the dates, Mr. Jackson so

7  we are all clear, especially me.

8        THE CLERK:  Yes, Your Honor.

9        Defense counsel shall file the motion to dismiss on

10  or before August 3rd.

11        Plaintiff shall respond to that motion on or before

12  August 31st.

13        Defense counsel shall reply to that response on or

14  before September 14th.

15        Once the motion is fully briefed, the moving party

16  shall file all motion papers on ECF by 5:00 o'clock pm on

17  September 14th.

18        THE COURT:  And shall provide courtesy copies to

19  chambers.

20        THE CLERK:  And provide all courtesy copies to

21  chambers by mail.

22        THE COURT:  Is that okay?

23        MR. FISHBEIN:  That's fine.

24        MR. BROWNE:  Thank you very much.

25        THE COURT:  Thank you.  Have a good holiday.  Have a

GR        OCR        CM        CRR        CSR

13

1   good summer.

2          MR. FISHBEIN:  Thank you.

3          MR. BROWNE:  You too.

4          (Matter concludes.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GR      DCR      CM      CRR      CSR



**JOHN W. SUTHERS**
Attorney General

**CYNTHIA H. COFFMAN**
Chief Deputy Attorney General

**DANIEL D. DOMENICO**
Solicitor General

**STATE OF COLORADO**
**DEPARTMENT OF LAW**

OFFICE OF THE ATTORNEY GENERAL

**STATE SERVICES BUILDING**
1525 Sherman Street - 7th Floor
Denver, Colorado 80203
Phone (303) 866-4500
Fax (303) 866-5474

December 27, 2006

<u>Advisory Opinion - Administrator, Colorado Collection Agency Board</u>

<u>Payment "Convenience Fees"</u>

Some collection agencies are charging fees when consumers make payments by credit card, telephone, or electronic check, check-by-phone or debit card. The purpose of this advisory opinion is to inform collection agencies subject to the Colorado Fair Debt Collection Practices Act (CFDCPA) that such payment "convenience fees" are permitted only in limited circumstances.

CFDCPA section 12-14-108(1)(a), prohibiting unfair practices, states:

> (1) A debt collector or collection agency shall not use unfair or unconscionable means to collect or attempt to collect any debt, including, but not limited to, the following conduct:

> (a) The collection of any amount, including any interest, fee, charge, or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law;….

A payment convenience fee is a fee incidental to the principal obligation. Consequently, a collection agency may not demand, collect, or attempt to collect a payment convenience fee for any particular payment method unless the underlying agreement creating the debt expressly provides for such fees, or if they are expressly permitted by law. A creditor's contract or agreement with the consumer for a payment convenience fee must be specific and clear enough to notify the consumer of the fee.[1]

There does not appear to be any Colorado law that expressly permits the addition of payment convenience fees. In fact, other Colorado laws prohibit the payment of such fees. For

---

[1] Note that Rule 2.03 of the Rules of the Administrator prohibits a licensee from suggesting that its clients add collection costs to existing debts, and that if a licensee recovers collection costs, it may only retain those costs as its fee unless it has another written arrangement with its clients. The Rules of the Administrator, Colorado Collection Agency Board, are available at http://www.ago.state.co.us/CADC/PDF/cabrules.pdf.

Page 2

example, merchants may not impose surcharges for accepting payment by credit card pursuant to section 5-2-212(1), C.R.S. In addition, payment convenience fees are not included in the list of permitted additional charges for consumer credit transactions in section 5-2-202, C.R.S.[2]

There may be policy arguments that payment convenience fees should be allowed if they are voluntary, do not exceed the collection agency's actual costs, benefit the consumer, and if the collection agency allows other payment methods that do not involve a fee. Payment convenience fees can also be subject to abuse, such as if a collection agency demands immediate payment by a single payment method that includes a fee. However, section 12-14-108(1)(a), C.R.S. does not permit such fees based on the voluntariness of the fee or the availability of other payment options. Rather, the payment method fee must be expressly included in the agreement created the debt or expressly permitted by law.

Collection agencies are reminded that if the underlying agreement creating the debt expressly authorizes a payment method fee and the consumer's authorization to pay the debt is obtained by telephone, the agency must also comply with Administrator's Rule 2.14, Payment Authorization by Telephone. That rule requires licensed collection agencies to obtain either advance written authorization for the payment, record or tape the verbal authorization if permitted by law, or transfer the call to a manager or second collector to verify the verbal payment authorization. In addition, it is advisable to remind the consumer at that time that the underlying agreement authorized a payment method fee and the amount that will be charged.

The Administrator's authority to issue advisory opinions derives from sections 12-14-103(1), 12-14-113(5), 12-14-117(1), and 24-1-113(4)(a), C.R.S.


_/s/ Laura E. Udis_
LAURA E. UDIS
Administrator
Collection Agency Board
(303) 866-5706
(303) 866-5474 (FAX)

---

[2] For consumer credit and lending transactions, see "Fees for Electronic Debits and Payments, Dec. 2, 2002, Advisory Opinion of the Administrator of the Uniform Consumer Credit Code, available at http://www.ago.state.co.us/UCCC/AdminOpin.cfm